# In the United States Court of Federal Claims

No. 16-1647

(Filed: 8 March 2024)

```
*************************************
MYNETTE TECHNOLOGIES, INC.           *
and STEVEN M. COLBY,                 *
                                     *
                  Plaintiffs,        *
                                     *
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
                  Defendant,         *
                                     *
GEMALTO, INC.,                       *
                                     *
                  Third-Party Defendant, *
                                     *
and                                  *
                                     *
IDEMIA IDENTITY & SECURITY           *
USA, LLC,                            *
                                     *
                  Third-Party Defendant. *
                                     *
*************************************
```

## PROTECTIVE ORDER
*Issued 9 November 2018; Amended 8 March 2024*

The court enters this Protective Order pursuant to RCFC 26(c)(1) and PRCFC 19(b). This order does not specify the procedures under which access to National Security Information is to be provided and may not be construed as requiring the production of any information that is classified for reasons of national security. Access to such information will be governed solely by existing laws and regulations.

1. As used in this Protective Order, these terms have the following meanings:

    (a) <u>Attorneys</u>: counsel of record in this litigation;

    (b) <u>Documents</u>: all materials within the scope of RCFC 34;

(c) <u>Restricted – Outside Attorneys' Eyes Only</u>: a subset of restricted documents that are designated pursuant to Paragraph 5 below;

(d) <u>Written Assurance</u>: an executed document found at Appendix of Forms, Form 9A;

(e) <u>Litigation Support Contractors</u>: contractors who are subject to an obligation, either by contract or trade practice, to maintain the confidentiality of any material received in performance of services related to this litigation and rendered for the attorneys of record in this litigation (by way of example and not limitation, litigation support contractors include copying services, court reporters, videographers, document storage and management contractors, database management contractors, and information technology and network support contractors);

(f) <u>Experts</u>: outside persons who are used by a party or its attorneys to furnish technical or expert services and/or to give expert testimony in this litigation; and

(g) <u>Third Party</u>: any party not directly involved in this litigation.

2. By identifying a document as "Restricted," a party may designate any document, including an interrogatory response, another discovery response, and/or a transcript that it, in good faith, contends constitutes or contains trade secret, proprietary, source-selection sensitive, or other similar confidential information that the owner thereof has taken reasonable measures to protect from disclosure to the public or competitors. In the case of the United States, other information and documents that may be identified as "Restricted" include:

    (a) documents categorized as "FOR OFFICIAL USE ONLY," including unclassified information in the possession or under the control of the Department of Defense; and

    (b) trade secret, proprietary, source-selection sensitive, or other similar confidential information belonging to non-parties but within the control or custody of the United States.

3. All "Restricted" documents, along with the information contained in the documents, may be used solely for the purpose of this litigation and no person receiving such documents may directly or indirectly transfer, disclose, or communicate the contents of the documents in any way to any person other than those specified in Paragraph 4 below. Prohibited purposes include, but are not limited to, use for competitive purposes or the prosecution of other intellectual property rights.

4. Without a court order, access to any "Restricted" document will be limited to:

    (a) the court and its personnel;

(b) attorneys of record in this litigation and any members or employees of their respective law firms, to the extent they have agreed to be bound by this Protective Order, or in the case of the United States, the attorneys, legal assistants, and legal support staff of the Department of Justice and any agency or department of the United States involved in this litigation, to the extent they have agreed to be bound by this Protective Order;

(c) persons shown on the face of the document to have authored or received it;

(d) litigation support contractors;

(e) inside counsel of the parties, subject to the conditions of Paragraph 9 below;

(f) a party's officers and employees directly involved in this litigation whose access to the information is reasonably required to supervise, manage, or participate in this litigation, subject to the conditions of Paragraph 9 below;

(g) experts, subject to the conditions of Paragraph 9 below; and

(h) any other person or entity that the parties (including any third party, to the extent the third party has designated the document as "Restricted") mutually agree in writing may have access to "Restricted" documents.

5. The parties have the right to further designate "Restricted" documents or portions thereof as "Restricted—Attorneys' Eyes Only." Without a further court order, however, disclosure of such information will be limited to the persons designated in Paragraphs 4(a), (b), (c), and (d) and, in addition, persons designated in Paragraph 4(h), to the extent the parties mutually agree in writing that an individual may have access to "Restricted—Attorneys' Eyes Only" information.

6. The subject matter relevant to the claimed invention involved in this litigation is hereby defined to be systems and methods relating to electronic passports and other identification documents, Radio Frequency Identification Tags, passport readers, readers for other identification documents and any electronic components or electromagnetic shielding when used in such systems and/or methods.

7. Disclosure of "Restricted—Attorneys' Eyes Only" information:

(a) Notwithstanding any other provision of this Protective Order, information designated "Restricted—Attorneys' Eyes Only" may not be disclosed to any of the person(s) named as inventor(s) on any patents asserted in this lawsuit, to include U.S. Patent Nos. 7,719,425, 7,924,156, 9,524,458, and 9,569,777 ("the Patents-in-Suit") or to any individual attorney involved in the prosecution of patent applications related to the subject matter of the claimed invention involved in this litigation.

(b) Individuals to whom "Restricted—Attorneys' Eyes Only" information has been disclosed under this Protective Order, may, however, provide copies of material prior art or other non-confidential information to counsel involved in prosecution to be provided to the United States Patent and Trademark Office.

(c) Unless otherwise agreed upon by the parties, no individual to whom "Restricted—Attorneys' Eyes Only" information has been disclosed under this Protective Order may be involved in the prosecution of patent applications related to the subject matter of the claimed invention involved in this litigation until four (4) years after the final disposition of this action, including all related appeals (the "Prosecution Bar").

    (1) The parties expressly agree that the Prosecution Bar set forth herein will be personal to any attorney who reviews information designated "Restricted—Attorneys' Eyes Only" and will not be imputed to any other persons or attorneys at the attorney's law firm or company, unless information concerning that designated information was communicated to an individual by one who reviewed such designated information.

    (2) For purposes of the Prosecution Bar, "prosecution" includes:

        (i) the drafting or amending of patent claims, or the supervising of the drafting or amending of patent claims;

        (ii) participating in or advising on any re-examination, reissue, inter-party review, or other post-grant review proceeding, except as specified below; and

        (iii) advising any client concerning strategies for obtaining or preserving patent rights related to the subject matter of the claimed invention involved in this litigation before the United States Patent and Trademark Office or other similar foreign government or agency.

    (3) "Prosecution" does not include participating in or advising on any re-examination, reissue, inter-party review, or other post-grant review proceeding by a party's lawyers, with respect to any patents in which an opposing party involved in this litigation has any interest or any patent involved in the pending action.

(d) Nothing contained herein will preclude lawyers having access to documents designated as "Restricted—Attorneys' Eyes Only" from having discussions with their clients about the general status of the case and about settlement offers, so long as during any discussions the lawyers do not impart any "Restricted—Attorneys' Eyes Only" information to their clients.

8. Third parties producing documents in the course of this litigation also may designate documents as "Restricted" or "Restricted—Attorneys' Eyes Only," subject to the same protections and constraints as the parties to the litigation. A copy of this Protective Order will be served together with any subpoena served in this litigation. All documents produced by such third parties, even if not designated by the third parties as "Restricted" or "Restricted—Attorneys' Eyes Only," will be treated by the parties to this action as "Restricted—Attorneys' Eyes Only" for a period of fifteen (15) days from the date of production. During that fifteen (15)-day period, any party may designate documents as "Restricted" or "Restricted—Attorneys' Eyes Only," pursuant to the terms of this Protective Order.

9. Each person who is to receive "Restricted" information, pursuant to Paragraphs 4(e), (f), or (g), must execute a "Written Assurance" found at Appendix of Forms, Form 9A. Opposing counsel must be notified in writing at least ten (10) days prior to disclosure of "Restricted" information to any such person. Such notice must provide a reasonable description of the person to whom disclosure is sought sufficient to permit an objection to be made. Upon good cause (which does not include challenging the qualifications of such outside person), a party may object in writing to disclosure within ten (10) days after receipt of notice by setting forth in detail the grounds on which the party's objection is based. If a party timely objects, no disclosure will be made until the party seeking disclosure obtains the prior approval of the court or the objecting party.

10. All depositions or portions of depositions taken in this litigation that contain information that may be designated "Restricted" or "Restricted—Attorneys' Eyes Only," according to Paragraphs 2 and 5, may also be so designated and thereby obtain the protections accorded other "Restricted" or "Restricted—Attorneys' Eyes Only" documents. Designations for depositions must be made either on the record or by written notice to the other party within ten (10) days of receipt of the final transcript. Unless otherwise agreed, depositions must be treated as "Restricted—Attorneys' Eyes Only" until ten (10) days after receipt of the final transcript. The deposition of any witness (or any portion of such deposition) that includes "Restricted" information may be taken only in the presence of persons qualified to have access to such information.

11. Any party who fails to designate documents as "Restricted" or "Restricted—Attorneys' Eyes Only" may designate the documents after production, to the same extent as it may have designated the documents before production, by providing written notice of the error and substituting copies of the documents bearing appropriate designations. The party receiving the designation must, upon receiving the replacement set of documents, immediately return or destroy the documents that lacked the designation to the designating party, and the parties must undertake reasonable efforts to correct any disclosure of such information, contrary to the designation. No showing of error, inadvertence, or excusable neglect will be required for a party to avail itself of the provisions of this paragraph.

12. In addition to the requirements imposed by Federal Rule of Evidence 502 and RCFC 26(b)(5)(B), any party who inadvertently discloses documents that are privileged or

otherwise immune from discovery must, promptly upon discovery of the error, advise the receiving party in writing and request that the documents be returned. The receiving party must return or certify destruction of the documents, including all copies, within ten (10) days of receiving such written request. The party returning or destroying such documents may thereafter seek reproduction of any such documents, pursuant to applicable law, although the party seeking reproduction may not use the fact that the documents were previously produced inadvertently to argue that privilege or any other immunity from discovery has been waived. No showing of error, inadvertence, or excusable neglect will be required for a party to avail itself of the provisions of this paragraph.

13. If a party intends to file a document containing "Restricted" information with the court, this Protective Order grants leave to make such filing under seal. Prior to the disclosure at trial or a hearing of any information designated "Restricted" or "Restricted—Attorneys' Eyes Only," the parties may seek further protections against public disclosure from the court.

14. Any party may request a change in the designation of any information designated "Restricted" or "Restricted—Attorneys' Eyes Only." Any such document will be treated as designated until such request is approved by the court. If the disclosing party does not agree to the requested change in designation, the party seeking the change may move the court for appropriate relief, providing notice to any third party whose designation of produced documents as "Restricted" or "Restricted—Attorneys' Eyes Only" in the litigation may be affected. The party asserting designation will have the burden of proving that the information in question is within the scope of protection afforded by this Protective Order and RCFC 26(c).

15. No later than sixty (60) days after the termination of this litigation, including all related appeals, each party must either destroy or return to the disclosing party all documents designated by the disclosing party as "Restricted" or "Restricted—Attorneys' Eyes Only," and all copies of and/or extracts or data taken from such documents. Each party must provide a certification in writing to the disclosing party as to such return or destruction within the sixty (60)-day period. Attorneys will be entitled, however, to retain one set of all documents filed with the court, obtained during discovery, or generated as correspondence in connection with the action, including one copy of documents designated "Restricted" or "Restricted—Attorneys' Eyes Only." Nothing in this Protective Order will require deletion of data from tapes or other storage maintained solely for the purpose of permitting the rebuilding or recovery of files, provided that access to this data is restricted to those otherwise permitted access under this Protective Order.

16. Any party may move the court for a modification of this Protective Order and nothing in this Protective Order will be construed to prevent a party from seeking such further provisions enhancing or limiting access to documents as may be appropriate.

17. The obligations imposed by this Protective Order will survive the termination of this litigation and all related appeals and will remain in effect until the party designating the

documents as "Restricted" or "Restricted—Attorneys' Eyes Only" agrees otherwise in writing or a further court order otherwise directs.

18. No later than sixty (60) days after the termination of this litigation, including all related appeals, the parties must file a motion with the court seeking leave to remove any physical materials designated "Restricted" or "Restricted—Attorneys' Eyes Only" from the office or custody of the clerk.

19. Nothing in this Protective Order will be construed to prevent any party from disclosing its own "Restricted" or "Restricted—Attorneys' Eyes Only" information in any manner that it considers appropriate.

20. In the event that any party seeks the production of documents containing material that may be classified, subject to International Traffic in Arms Regulations or other export controls, or otherwise restricted by federal law, the parties will confer regarding an appropriate resolution consistent with federal law. Notwithstanding anything contained in this Protective Order, National Security Information will be controlled according to applicable statute.

21. The court reserves the right, after reviewing the record and other information submitted by the parties, to modify this Protective Order, or the parties' designation of materials or proceedings as "Restricted" or "Restricted—Attorneys' Eyes Only," in the event such materials or proceedings are not properly classified as confidential, privileged, proprietary, competition-sensitive, or otherwise protectable.

[continued next page]

Addendum to Protective Order
*Addendum added 8 March 2024 pursuant to Court Order:*
*Mynette Techs. v. United States*, No. 16-1647 (Fed. Cl. Mar. 8, 2024), ECF No. 185

Mynette Technologies, Inc., and its owners Robert Yorio and Steven M. Colby (collectively, the "Mynette Parties") covenant not to sue Defendants the United States, Thales DIS USA, Inc., Idemia Identity & Security USA, LLC (collectively "Defendants") for infringement of the Restricted Patents; any of the Defendants' respective predecessors, successors (but not as to preexisting products of a successor that are not otherwise covered by this covenant), parents, subsidiaries, divisions, departments, agencies, affiliates (i.e., an entity that has a parent entity in common with any Defendants), and all past and present directors, officers, and employees of Defendants (collectively "Affiliates") for infringement of the Restricted Patents; or any direct or indirect customer of any Defendant for infringement of a Restricted Patent based on a customer's use , manufacture, sale, offer for sale, exportation, importation, or distribution of (i) a Covered Customer Product, or (ii) a downstream product incorporating a Covered Customer Product. For (i) and (ii), the covenant applies only to the extent a Covered Customer Product is relied upon by the party asserting a Restricted Patent to satisfy, in whole or in part, an element or a step of a claim in the Restricted Patent at issue.

"Restricted Patents" are defined as any and all patents, patent applications, and inventions (regardless of the date filed, acquired or conceived) in which

> (a) any of the Mynette Parties have a pecuniary or beneficial interest (direct or indirect) or are an inventor, and

> (b) that includes one or more claims pertaining, in whole or in part, to:

>> (i) devices adapted to communicate by contact, or RFID and/or contactless devices, where the devices are capable of radio frequency communications with a reader (which, for the avoidance of doubt, includes, but is not limited to electronic passports and other identification documents that include such devices, and products incorporating an embedded processor that supports such RFID or contactless communications with a reader);

>> (ii) the use of devices in category (i);

>> (iii) embedded operating systems for use with devices in category (i) or (ii), and the use of such operating systems;

>> (iv) methods for personalization of devices in category (i) or (ii);

>> (v) readers for communicating with devices in category (i) or (ii);

>> (vi) electromagnetic components or shielding for use with devices in category (i);

   (vii) apparatuses capable of communication as encompassed by categories (i) or (ii).

For the avoidance of doubt, the Restricted Patents include the Patents-in-Suit and their direct and indirect parents, continuations, continuations-in-part, divisionals, applications, reissues, reexaminations, renewal extensions and foreign equivalents.  For purposes of this Agreement, "pecuniary or beneficial interest" in a patent, patent application, or invention includes, but is not limited to, patents, patent applications, and inventions owned or controlled, in whole or in part, by any of the Mynette Parties, or by any business or entity owned or controlled, directly or indirectly, in whole or in part, by any of the Mynette Parties and/or any and all patents, patent applications, and inventions in which any of the Mynette Parties receive, or can claim, benefits or compensation as a result of the licensing of, or litigation regarding, those patents.  Notwithstanding the above, ownership of less than 5% of a publicly-traded company shall not form the basis for a "pecuniary or beneficial interest" in any patent, patent application, or invention, so long as none of the Mynette Parties are executives or board members of that entity or have the right to appoint board members or executives.  Should Dr. Colby be named as a joint inventor in his capacity as prosecuting attorney for a client of his law firm employer, on an otherwise Restricted Patent where he has assigned any interest he has as an inventor to the client in exchange for no additional compensation beyond prosecution fees, then that client's patent will not be included as a Restricted Patent.

"Covered Customer Product" is defined as all past, current, or future products, components, devices, systems, or services that have been or will be made, produced, procured, have made, or developed by or on behalf of a Defendant, and that is then sold or provided commercially to a customer of a Defendant which are covered, or alleged by the party asserting a Restricted Patent to be covered, in whole or in part, by an element or a step of a claim of any Restricted Patent in question.  A product that does not meet this condition with respect to a particular Restricted Patent is not a Covered Customer Product with respect to that Patent; and the direct or indirect customer is therefore not granted any rights or covenants with respect to the customer's use, manufacture, sale, offer for sale, exportation, importation, or distribution of a Covered Customer Product for that particular Restricted Patent.  Other than "have made" rights, a "Covered Customer Product" does not include a product that Defendants procure and resell (or otherwise provide) without some form of physical or digital modification, or incorporation into a broader product.

The covenants granted herein shall run with the Restricted Patents and shall be binding on any successors-in-interest, licensees, transferees, or assigns thereof.

<u>Assignee Notice Obligation</u>:  When assigning any Restricted Patent, an assignor is obligated to provide a copy of this Covenant Not to Sue, and notice that the assigned patent is a Restricted Patent, to the assignees.  Any assertion of infringement of a Restricted Patent against an accused infringer in contravention of this Covenant Not to Sue—without written proof of compliance with this Assignee Notice Obligation to the full scope required under the covenant—shall entitle the accused infringer to recover its costs, expenses and reasonable attorney's fees from any assignee asserting infringement.

The costs, expenses and reasonable attorney's fees recoverable include, without limitation, amounts paid in the investigation and defense of the action, and amounts expended with respect to

any patent office proceedings related to the asserted Restricted Patent, in addition to any other relief to which the accused infringer may be entitled.

For the avoidance of doubt and notwithstanding the above, the covenant granted herein does not apply to or include Mynette and Colby's assertion of the Asserted Claims[1] in the existing litigation *Mynette Technologies, Inc. and Steven Colby v. United States*, No. 16-1647.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge

---

[1] The Asserted Claims are: (1) claims 1, 5, 51, and 53 of U.S. Patent No. 7,924,156; (2) claims 1, 3, and 6 of U.S. Patent No. 7,719,425; (3) claims 5, 8, 12, 14, 15, 16, and 20 of U.S. Patent No. 9,524,458; and (4) claims 9, 11, 14, and 16 of U.S. Patent No. 9,569,777.